UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON S. SEEVERS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>　　　　　Defendant. | No. 2:18-cv-0208 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, lay testimony, and the side effects from plaintiff's medications constituted error.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 4 & 7.)

For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

"On April 19, 2013," plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on July 30, 2010. (Transcript ("Tr.") at 20.) Plaintiff's alleged impairments included cervical degenerative disc disease, ulcerative colitis, arthritis in the spine, abdominal pain, and difficulty sleeping. (Id. at 175.) Plaintiff's application was denied initially, (id. at 91-95), and upon reconsideration. (Id. at 97-101.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on June 24, 2016. (Id. at 39-63.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 39-41.) In a decision issued on September 15, 2016, the ALJ found that plaintiff was not disabled. (Id. at 33.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since July 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: cervical degenerative disc disease, status-post two surgical repairs with post-fusion syndrome; lumbar degenerative disc disease status-post surgical repair; ulcerative colitis; chronic obstructive pulmonary disease (COPD); seasonal allergies; psychological factors affecting his physical illness; and mild adjustment reaction (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, prior to February 2015, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: he could occasionally stoop, kneel, crouch, and balance, but never crawl or climb ladders, ropes, or

scaffolds. He could frequently, but not continuously, handle and finger with the right upper extremity and only occasionally reach overhead bilaterally. He could have no exposure to atmospheric conditions. In addition, he required the freedom to sit and stand as needed, while remaining on task. As for mental limitations, he required a low stress work environment, defined as one requiring occasional workplace changes and occasional work-related decision-making. He could have only occasional public contact. After February 2015, the claimant's residual functional capacity was the same except that he was limited to lifting/carrying ten pound (sic) occasionally and less than ten pounds frequently due to increased neck pain and a subsequent surgery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 22-33.)

On December 1, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's September 15, 2016 decision. (Id. at 1-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 30, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

////

support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

////

////

**APPLICATION**

Plaintiff's pending motion argues that the ALJ committed the following three principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; (3) the ALJ's treatment of the subjective testimony constituted error; and (3) the ALJ failed to consider the side effects of plaintiff's narcotic pain medication.[3]  (Pl.'s MSJ (ECF No. 11) at 7-17.[4])

**I.    Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]"  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661,

////

---

[3]  The court has reordered and reorganized plaintiff's arguments for purposes of clarity and efficiency.

[4]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff challenges the ALJ's treatment of the opinion of Dr. Richard P. Musselman, a treating physician. (Pl.'s MSJ (ECF No. 11) at 11-14.) In this regard, on November 21, 2013, Dr. Musselman completed a Physical Residual Functional Capacity Questionnaire. (Tr. at 506-09.) The ALJ recounted Dr. Musselman's opinion, stating:

> . . . Richard P. Musselman, DO determined that the claimant could stand/walk for less than two hours and rarely twist, stoop, crouch, squat, or climb stairs. He also said that the claimant would need a fifteen to twenty minute break every hour during the day and would miss more than four workdays per month.

(Id. at 30.)

The ALJ afforded Dr. Musselman's opinion "little weight," asserting:

> This opinion is also[5] inconsistent with the record, including Dr. Musselman's own treatment notes, which included relatively normal physical examinations and described activities well in excess to the limits given in his medical source statement. Moreover, this opinion did not seem to consider the claimant's improved colitis. I, therefore, assigned this opinion little weight.

(Id.) The ALJ's treatment of Dr. Musselman's opinion is erroneous in several respects.

First, the reasoning consists of two, vague and conclusory sentences unsupported by reference, or citation, to any evidentiary support. The ALJ does not explain what evidence supports the conclusion that Dr. Musselman's opinion was undermined by treatment notes, what alleged activities were in excess of the opined limitations, or the relevance of plaintiff's improved colitis.

"An ALJ may only reject a treating physician's contradicted opinion[] by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

---

[5] The use of the word "also" here appears to be a typo, as no other reason was given for discrediting Dr. Musselman's opinion.

6

findings.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). In this regard, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014); see also Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Second, the ALJ's characterization of Dr. Musselman's treatment notes is belied by the record. On August 17, 2010, Dr. Musselman examined plaintiff and found that plaintiff had "progressive cervical spine stenosis," that was "of a grave concern" to Dr. Musselman. (Tr. at 951.) In November of 2010, Dr. Musselman advised plaintiff that "he may never be pain free and may never get off drugs[.]" (Id. at 963.) At that time, those drugs included Fentanyl and Dilaudid. (Id.) See Ligons v. Berryhill, No. 2:17-cv-1283 EFB, 2018 WL 4502483, *4 (E.D. Cal. Sept. 20, 2018) (ALJ erroneously characterized treatment regimen including Fentanyl and "other strong narcotic pain medications" as conservative) (citations omitted).

Dr. Musselman's opinion was later supported by Dr. Rudolph Schrot, who wrote Dr. Musselman on July 11, 2011, following an examination of the plaintiff post-spinal surgery. Dr. Schrot opined to Dr. Musselman that plaintiff's "symptoms may always be present due to permanent damage in the spinal cord." (Tr. at 356.) On November 21, 2013, Dr. Musselman examined plaintiff and indicated that plaintiff should "consult Dr. Purcell for injections in his neck" to treat plaintiff's "cervical spinal fusion." (Id. at 511.)

Accordingly, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons for rejecting Dr. Musselman's opinion. Plaintiff, therefore, is entitled to summary judgment on this claim.

1  **II.     Subjective Testimony**

2      **A.     Plaintiff's Subjective Testimony**

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 11) at 7-11.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

---

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Tr. at 26.) Plaintiff argues that the "ALJ provided two grounds to justify rejecting Plaintiff's testimony." (Pl.'s MSJ (ECF No. 11) at 8.)

Plaintiff notes that the ALJ first relied on a lack of objective evidence to support the severity of the alleged symptoms. (Id.) And it is true that "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added). Here, however, the ALJ did not reject plaintiff's testimony based solely on a lack of medical evidence.

The ALJ also rejected plaintiff's testimony because the record showed that despite the alleged impairments, plaintiff "engaged in relatively robust physical activities." (Tr. at 27.) Specifically, the ALJ noted that a June 26, 2012 treatment note from Dr. Edward Richert noted that plaintiff reported having gone on a hike "with a 30-pound pack[.]" (Id. at 27, 595.) The next day plaintiff engaged in "some very heavy yard work," consisting of "a lot of digging," and use of "an ax on roots." (Id.) And on February 7, 2014, Dr. Richert stated that plaintiff reported "doing some physical activity on his truck again," which consisted of using "a buffer" on his truck. (Id. at 27, 48, 664.)

Plaintiff notes that after these activities, plaintiff "suffered significant pain[.]" (Pl.'s MSJ (ECF No. 11) at 10.) And the court is cognizant of the fact that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987). However, "a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms . . . when . . . the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014).

Here, while plaintiff's activities may have resulted in later pain, it is also true that the activities cited by the ALJ contradicted plaintiff's testimony. In this regard, plaintiff's ability to hike carrying a 30-pound pack one day and then the following day engage in heavy yard work contradicted plaintiff's testimony that plaintiff impairments limited plaintiff's ability stand, lift twenty pounds, and walk. (Tr. at 26.) The same is true of plaintiff's ability to use a buffer on his vehicle.

Accordingly, the ALJ provided a clear and convincing reason for rejecting plaintiff's testimony. Plaintiff, therefore, is not entitled to summary judgment as to this claim.

**B.     Lay Testimony**

Plaintiff next challenges the ALJ's treatment of the lay testimony offered by plaintiff's wife. (Pl.'s MSJ (ECF No. 11) at 14-15.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d

1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ acknowledged the testimony offered by plaintiff's wife and assigned it "some weight" because she was "likely familiar with the claimant's impairments due to longitudinal familiarity." (Tr. at 30.) In support of this determination the ALJ noted that plaintiff's wife "noted limitations well in excess of those documented in the record," and that "treatment notes showed that the claimant was much more active than she described." (Id.)

As noted above, the ALJ rejected plaintiff's testimony, in part, because treatment notes reflected that plaintiff's activities were inconsistent with plaintiff's testimony. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Because the ALJ provided a clear and convincing reason for rejecting plaintiff's testimony, that same reason constitutes a germane reason to reject the testimony of plaintiff's wife. See Bennett v. Colvin, 202 F.Supp.3d 1119, 1131 (N.D. Cal. 2016) ("In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to the claimant's.").

Accordingly, the ALJ provided a germane reason for rejecting the lay witness testimony. Plaintiff, therefore, is also not entitled to summary judgment on this claim.

**III.    Side Effects of Plaintiff's Narcotic Pain Medication**

Plaintiff's final argument is that the ALJ failed to consider "all the effects from Plaintiff's long-term narcotic dependency." (Pl.'s MSJ (ECF No. 11) at 17.) It is true that the "ALJ must consider all relevant evidence in the record, including . . . medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p, *5).

Here, although plaintiff cites to medical records noting that plaintiff experienced dizziness on occasion and general concerns with plaintiff's "narcotic dependency," plaintiff has failed to cite to evidence of an impairment that was not considered by the ALJ. Moreover, although "[a]n ALJ must give clear and convincing reasons for rejecting a claimant's testimony regarding the side effects she experiences from her medications" plaintiff does not point to any testimony concerning side effects that the ALJ failed to consider. Salazar v. Astrue, 859 F.Supp.2d 1202, 1228 (D. Or. 2012). And, as noted above, the ALJ provided a clear and convincing reason for rejecting plaintiff's testimony.

Accordingly, plaintiff is not entitled to summary judgment on this claim.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

12

Here, the court cannot find that further administrative proceedings would serve no useful purpose. This matter will, therefore, be remanded for further proceedings consistent with this order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 12) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with the order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: August 2, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\seevers0208.ord